Gaston, Judge.
 

 — There are several points in this case on which we wished an argument, and this wish we felt it our duty to express. But the parties have thought proper to submit the case without an argument on either side, and we have been obliged to proceed to judgment without the aids which were hoped from a discussion.
 

 
 *314
 
 In the opinion which we are called upon to review, the attention of the Court seems to have been directed to the examination of the equitable, rather than of the legal title to the land in dispute. It is essential to the preservation of the integrity of our system of jurisprudence, in which the jurisdiction of legal and equitable subjects is assigned to distinct tribunals, that a legal claim should be determined exclusively on legal principles.
 

 Upon the case made it appears, that on the 23d of July, 1778, Hugh Montgomery was seized in fee simple of the premises in controversy, and that on the succeeding day he conveyed by deed of bargain and sale a term for five hundred years to John Michael Grafft, conditioned to be void on the payment to Grafft or his assigns of the sum of fifteen hundred pounds; one thousand thereof within three months after the 24th July, 1779, and the residue within three months after the 24th July, 1780. It appears, also, that Montgomery duly conveyed his reversionary interest in the premises to Kerr, Ncsbit and Brown, upon certain trusts to himself for life; and after his death, then in trust for his infant daughters, Rachel and Rebecca, the wives of the defendants, Wellborn and Stokes; and that he died some time in the year 1780; that the mortgage money vyas not paid when it became due; that Grafft died, and ' that on the 7th February, 1784, Bagge, his administrator, assigned the mortgage term with the debt to Marshall, by whom it was in like manner bequeathed to Benzein, who also bequeaied it to Canow, who on the 17th May, 1815, executed.a release thereof to Mrs. Stokes and Mrs. Well-born, the
 
 cestui que trusts
 
 aforesaid, who were then in possession. The lessors of the plaintiff claimed title under a grant from the state to Joseph Holman, dated the 3d March, 1779; by mesne conveyances from Holman regularly deduced, and a possession under this claim of title in themselves and their assignors, from the date of the grant'down to the 8th November, 1814, when the possession was taken by the defendants.
 

 Did nothing else appear in the case, we apprehend that the judgment must be reversed, for that, upon this view of it, the plaintiff would be entitled to recover. Upon the
 
 *315
 
 execution of Montgomery’s mortgage, the legal estate for the term of years thereby created passed to Grafft, and by Montgomery’s deed to Kerr, Nesbit and Brown, the
 
 legal
 
 reversion immediately dependent thereon was transferred to them. This latter conveyance is not made a part of the case. If, under that conveyance, or by other means, any legal estate was raised or transferred to the daughters of Montgomery, it is to be regretted that the fact does not appear. We cannot presume it, but must understand that they had no other than the beneficial or trust estate which the case states to have been declared for them in that conveyance. The statute of limitations which was suspended by several acts of Assembly during the Revolutionary war, began to run in favour of the possession under the grant to Holman, in June 1784. As Grafft or his assignees did not enter within seven years thereafter, and it is not shown that they were within any of the exceptions of the act of 1715, he, and all claiming under him, were barred from any entry thereafter to be made. It is stated in the opinion of his Honor, that although the right of entry of the mortgagee was thus barred, the right of the reversioners was not thereby affected. We believe this position to be correct. The statute excludes and disables from entry such persons as fail to enter within seven years after their right or title shall have accrued. The ouster of a tenant for years under the claim of a fee by a stranger, is said in the books to be a
 
 dissesin
 
 of him in reversion or remainder. Whether it is to be so regarded in our country, where an ejectment is the
 
 only
 
 remedy, or the only remedy in use, for trying disputed titles, may be a question worthy of consideration. But, however this may be, the reversioner, during the continuance of the prior estate, has no right to the
 
 possession
 
 of the land — and cannot therefore have a right to enter thereon.
 
 Orrell
 
 v.
 
 Maddox,
 
 Runnington on Ejectment, Appendix 1.
 
 Doe ex dem. Cook
 
 v.
 
 Danvers,
 
 7 East, Rep. 299. As his right of
 
 entry
 
 arises upon the expiration or extinguishment of the term, he has seven years thereafter to assert it, and until those seven years expire, he is not
 
 within
 
 the bar oi this statute. See 2 Preston on Abstracts, 351. But there is
 
 *316
 
 a mistake in supposing, upon the facts stated, that the release by Canow to Mrs. Stokes and Mrs. Wellborn, extinguished the estate of the mortgagee, and thereby gave right of immediate possession to the trustees. In equity indeed the mortgagor is held to be the real owner of the land, the
 
 debt
 
 being regarded as the principal thing, an(j the land the accessory — as security for the payment of the debt. But at law it is otherwise. The legal interest *n term Passes uPon the execution of the mortgage, and if the money be not paid according to the condition °f the mortgage, then the estate becomes absolute at law in the mortgagee. A Court of equity will allow a mortgagor to redeem within a reasonable time by paying the principal and interest of the debt and costs, and when this is done the mortgagor acquires an equitable right in the term. But the term
 
 in law
 
 is not, by the payment of the debt after the day, divested from the mortgagee; it yet remains in the mortgagee, and is to be assigned, transferred, or surrendered, as other legal terms for years. Mrs. Wellborn and Mrs. Stokes had, as appears from the case, an equitable estate, subject to the charge of the mortgage debt; and it may be, as was declared in
 
 the
 
 opinion, that the release extinguished this charge, and that they then had an estate in equity freed and exonerated therefrom. But however this may be,
 
 in law,
 
 they had
 
 no
 
 estate in the land. The freehold, subject to the term, was in the trustees, or the survivor of .them, or in the heirs of the survivor (if a fee simple), or in the heirs or devisees of Montgomery. If, therefore, Mrs. Stokes and Mrs. Wellborn acquired any interest at law under the deed of release, it was the interest of the mortgagee; the term was not thereby extinguished, but assigned — and if his right of entry had been taken away, by the possession of Holman,
 
 they
 
 claiming as his assignees, could not be in any better situation. We, however, must understand that nothing passed by the instrument. It is not set forth, but the case states it to be a
 
 release
 
 from the assignee of the mortgagee to those equitably entitled to the estate in reversion. There was no privity to make it operate as a release or surrender, and if an assignment could be made, it is not shown that it pur
 
 *317
 
 ported to make an assignment of the term. Upon this view then the legal term was still outstanding, the right of entry under that term was barred — the trustees of the defendants had no right to the possession until the expiration of the term — and there was, therefore, no existing legal defence to the plaintiff’s right to recover.
 

 But there is an important fact in the case which is not prominently presented, but which nevertheless appears, and may entirely change the legal rights of the parties. The mortgage deed is appended to, and expressly stated to be made a part of the case, and on it is the following endorsement:
 
 “
 
 Wilkes County, North Carolina, November the 8th, 1815. Received of John Brown, trustee under the decree of the Supreme Court of North Carolina, in the case of C. L. Benzein’s executors and others, complainants, and William Lenoir and others defendants, the sum of $9,263, being in full satisfaction for the within
 
 mortgage,
 
 and
 
 of the sum
 
 decreed in the said suit.
 

 “ Jno. G. Canow, by his Att’y,
 

 “
 
 Lewis D. Schweinitz.”
 

 We are to regard this endorsement as authentic, or it would not have been made a part of the case; and it must be understood to have been exhibited in evidence by the defendants. If the John Brown therein named is the same John Brown named in the conveyance of Montgomery, and the survivor of those to whom the legal reversion was thereby granted, or has by inheritance or otherwise succeeded to the estate of the grantees in that conveyance, then at the date of this endorsement he had the legal freehold dependent on the term as the trustee of the wives of the defendants. In the case of
 
 Farmer on dem. of Earl
 
 v.
 
 Rogers,
 
 2 Wilson’s Rep. 46, the heir at law of one who had executed a mortgage term for five hundred years, brought an ejectment against the defendant who had the mortgage deed in
 
 his
 
 possession. On exhibition of the deed, it was found to have an endorsement on it, without seal or stamp, in these words: “ Received this — day of March, 1738,” (being after the day limited by the proviso,) “ of A. B.” (the mortgagor,) so much money
 
 “
 
 for all principal and interest till this day; and I do release the said
 
 *318
 
 A. B., and discharge the within mortgaged premises from the term of five hundred years.” Signed by the mortgagee. It was resolved by the Court that before the statute of frauds, a lease for years, either by deed or parol, might have been surrendered without deed by parol; that the words release and discharge the term of five hundred years, are much stronger than words which in many cases have amounted to a surrender,
 
 ut res magis valeat quam pereat;
 
 that, under the statute, a lease for any term of years may be created by writing without deed, and that the same may be surrendered by deed or note in writing, and that there was no occasion for a stamp upon this endorsement, it not being a deed. In the year 1815 we ^ad n0 statute of frauds, and a surrender of a term might have been made wholly by parol. The endorsement in ^ie case before us does contain
 
 words
 
 quite as strong as those in the case quoted,“release the said A. B. and discharge the within mortgaged premises from the term,” but connected with the surrender of the mortgage deed to him having the immediate legal reversion, the court would construe the endorsement as amounting to a surrender of the term. The mortgagee delivers the lease to him whose estate commences in enjoyment as soon as the interest in the lease expires, with an endorsement that he has received full satisfaction
 
 “
 
 for the within mortgage,
 
 and
 
 of the sum decreed upon it.” A surrender is “ the yielding up of a particular estate to him that hath the immediate estate in reversion or remainder, wherein it may drown by agreement between them.” 1 Inst. 337, b. Surrenders are always favoured in law. 1 Inst. 338, a. They require 110 technical words but such only as express the intention to y*eId up. 2 Rolls. Abr. 497. Sheppard’s Touchstone, 305. That intention, we think, would be plainly manifested here. The mortgagee declares his assent that the mortgage shall continue no longer; and declares this assent t0 him whose enjoyment takes place upon the determination of the mortgage.
 

 We are also of opinion, that the objection thatCanowwas not in possession at the time of this transaction, was pro-properly overruled. The possession of the mortgagor, or
 
 *319
 
 of those who claim under the mortgagor, is the possession of the mortgagee. It is not stated in the case, that a possession
 
 in fact,
 
 ever was taken under the mortgage. A legal possession, was transferred by operation of the deed of bargain and sale. But whether the possession was left ° . . . . . with Montgomery, and held by him and those m reversion, until the dispossession by Holman; or was actually taken by Grafft, and after his dispossession, was retaken by the defendants, seems to us immaterial; for whenever retaken, it was a possession, avowedly as representing the mortgagor, and therefore is,
 
 in law,
 
 at most but a tenancy at the will, or by permission of the mortgagee. Having this possession by his tenants, the defendants, he could rightfully surrender the mortgage term to him, having the immediate estate in reversion.
 

 It has occurred to us, that an objection might be raised, though none such is intimated in the case, to the validity of the assignment made by Grafft’s administrator to Marshall, because of the adverse possession of Holman. If the assignment were necessarily null as to all purposes and to all persons, we should be obliged to consider the case, as though none had been in fact made. But waiving all other modes in which it
 
 might
 
 be operative, we can see no reason why an assignment, like any other conveyance, may not take effect by estoppel, between parties and privies, and thus legally operate to transfer the estate of the assignor, although he was not in possession, when the assignment was executed. As the case finds the
 
 fact,
 
 that the administrator of Grafft did
 
 assign
 
 or
 
 convey
 
 the term to Marshall, we must suppose it to be an effectual assignment or conveyance, so far as in law it
 
 could
 
 operate. As between the parties, therefore, the interest of Grafft passed to Marshall, and ultimately to Canow, who made the surrender, -which merged the term in the reversion. The instant the term ceased, the right of entry accrued to him, having the immediate reversionary estate. His
 
 cestui que trusts
 
 were then on the premises. Before the surrender of the term, they were the tenants of the termor or mortgagee. Upon the surrender, they became in law the tenants of the surrenderee, their own trustee.
 

 
 *320
 
 The case, however, is altogether silent in informing us who is the John Brown named in the endorsement. He is described therein, as John Brown “ trustee under the decree of the Supreme Court, in the case of Benzien’s Executors and others complainants, and William Lenoir and others, defendants.” This description is hardly applicable to one who was not declared trustee by decree, but created trustee by act of the party. However this may be, we cannot assume as a fact, that because the person mentioned in the endorsement, bears the same name with the individual mentioned in Montgomery’s conveyance, made thirty-four or five years antecedently thereto, the person designated in the endorsement is the same who is mentioned in the conveyance. If he be not the same, then it does not appear that
 
 he
 
 had any legal estate in which the mortgage term could merge.
 

 As the lessors of the plaintiff made out a
 
 prima facie
 
 pos-sessory title to the premises ; and it does not appear upon the facts stated, that a right of entry had accrued to the defendants, or those under whom they claimed, so as to defeat the possessory title; we feel ourselves bound to reverse the judgment, and to award a
 
 venire de novo. On
 
 a second trial, the parties seeing distinctly the points on which the controversy turns, will have an opportunity of distinctly showing the facts which may definitely settle their legal rights.
 

 Per Curiam. Judgment reversed.